UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

ANDRAE SWEARING,

                                 Plaintiff,

       -against-

GUARANTEED HOME IMPROVEMENT LLC, and
RICARDO MARTINEZ, and JUSTIN PFUNSTEIN,
individually,

                                 Defendants.

-------------------------------------------------------------------X

Civil Case No.:  2:25-cv-514

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff ANDRAE SWEARING ("Plaintiff"), by and through his attorneys, JOSEPH & NORINSBERG, LLC, as and for his Complaint against GUARANTEED HOME IMPROVEMENT LLC ("Guaranteed"), and  RICARDO MARTINEZ ("Martinez"), and JUSTIN PFUNSTEIN ("Pfunstein"), individually (collectively, "Defendants"), alleges upon personal knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

**NATURE OF CASE**

1.       Plaintiff brings this action for Defendants' continuous violations of: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219; (ii) the overtime provisions of the New York Labor Law ("NYLL") §§ 160, 650 et seq., and New York Comp. Codes R. & Regs ("NYCCRR") Tit. 12, § 142-2.2; (iii) the minimum wage provisions of the NYLL; (iv) the NYLL's requirement that employees receive one hour's pay at the minimum wage rate for any day in which the spread of hours exceeds ten, NYLL §§ 652, 198, 12 NYCRR § 142-2.4; (v) the requirement that employers furnish employees with a wage notice upon hire containing specific categories of accurate information under the NYLL § 195(1); (vi) the requirement that

1

employers furnish employees with wage statements on each payday containing specific categories of accurate information under the NYLL § 195(3); (vii) the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3); (viii) the anti-retaliation provisions of the NYLL, §§ 215(1) and 740; and (ix) any other cause(s) of action that can be inferred from the facts set forth herein.

## PRELIMINARY STATEMENT

2. This action arises from Defendants' calculated and appalling exploitation of its workforce, a blatant disregard for basic human dignity and labor protections.

3. Plaintiff, a hardworking technician, endured relentless violations of wage and hour laws, systematic retaliation, and unconscionable workplace abuses that shock the conscience.

4. Defendants subjected Plaintiff to grueling work schedules of up to 96 hours per week while paying poverty-level wages, deliberately denying him the legally mandated compensation for his labor.

5. When Plaintiff dared to raise concerns about these inhumane conditions, Defendants unleashed a campaign of retaliation, including unlawful suspensions, humiliation, and intimidation, culminating in the egregious termination of Plaintiff's employment.

6. The labor abuse reached its zenith when Plaintiff suffered a severe workplace injury, only to be mocked by Defendants through the production of hoodies emblazoned with images of his accident—an act so abhorrent it defies comprehension.

7. The culmination of Defendants' vindictive conduct occurred when Plaintiff asserted his legal rights on January 10, 2025, by serving Defendants with a demand letter.

8. In an act of flagrant retaliation, Defendants terminated Plaintiff's employment immediately, with Plaintiff's manager openly declaring, "***I do whatever I fucking want***."

9.      Defendants' actions represent a grotesque abuse of power and a stark betrayal of the most fundamental workplace protections. This lawsuit seeks to hold Defendants accountable for their willful and malicious conduct, ensuring that justice is served for Plaintiff and all others who have suffered at the hands of Defendants' oppressive labor practices.

## JURISDICTION AND VENUE

10.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et. seq*.

11.     This Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction over Plaintiff's NYLL and  non-federal claims arising from a common nucleus of operative facts, such that they form part of the same case or controversy under Article III of the United States Constitution.

12.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief herein occurred within this judicial district.

## PARTIES

13.     At all relevant times, Plaintiff worked for Defendants in New York and was a "person" and "employee" entitled to the protections as defined in the FLSA, NYLL, and NYCRR.

14.     At all relevant times herein, Defendant Guaranteed was and is a New York limited liability company with its principal place of business located at 500 Old Bethpage Road, Plainview, New York 11803.

15.     At all relevant times herein, Defendant Guaranteed was and is an "employer" of Plaintiff within the meaning of the FLSA, NYLL, and the NYCCRR.  Additionally, at all times

3

relevant to the FLSA, Defendant Guaranteed's qualifying annual business exceeded and exceeds $500,000.00.

16.    At all relevant times herein,  Defendant Guaranteed was and is engaged in interstate commerce within the meaning of the FLSA, as it employed and employs two or more employees, operates a business that purchases numerous products, construction materials, grout bags, ladders, machinery, and equipment, all which  have moved across state lines, , and has accepted credit cards as a form of payment based on cardholder agreements with out-of-state companies, as well as cash that has naturally moves across state lines. The combination of these factors subjects Defendant Guaranteed to the FLSA's overtime requirements as an enterprise.

17.    Furthermore, at all relevant times herein, Defendants Martinez and Pfunstein were Plaintiff's managers during his employment with Defendant Guaranteed.

18.    In those roles, Defendants Martinez, and Pfunstein, were responsible for hiring employees, including Plaintiff, overseeing and managing the day-to-day operations of the business, including the work Plaintiff performed, and were and are ultimately responsible for all matters relating to discipline and firing employees.

19.    Defendant Martinez informed Plaintiff of his initial hiring and ultimate firing, and most frequently determined Plaintiff's daily job assignments and thus his hours.

20.    Defendants Martinez, and Pfunstein, were responsible for determining employees' rates and methods of pay, and ensuring employees' payment of their wages.

21.    Defendants Martinez, and Pfunstein, were together responsible for setting workers' work schedules, including Plaintiff's, and for maintaining employees' employment records, including those matters with respect to Plaintiff's hours worked and pay received.

22.    As explained below, Plaintiff made numerous complaints to Defendants Martinez, and Pfunstein, about his grueling work hours and improper pay from Defendants, including lack

4

of any overtime compensation, and in response to Plaintiff's wage complaints, Defendant Martinez informed Plaintiff of the Defendants' decision to terminate his employment.

23.     At all relevant times herein, Defendants Martinez, and Pfunstein were and are "employers" of Plaintiff within the meaning and intent of the FLSA, the NYLL, and the NYCRR.

## BACKGROUND FACTS

24.     Defendant Guaranteed specializes in high-quality home improvement and residential remodeling services.

25.     Defendant purports to be committed to delivering exceptional craftsmanship and customer service, offering a wide range of services that include interior and exterior renovations, roofing, siding, windows, and general contracting solutions.

26.     Plaintiff worked for Defendants at various job sites, including residential houses and apartments, in Nassau and Suffolk Counties, as well as in New York's Five Boroughs, and throughout Westchester, New Rochelle, Yonkers, and Mount Vernon.

### *Grueling Work Schedule*

27.     Plaintiff began working for Defendant on October 11, 2021, as a technician in training.

28.     After approximately eleven months, Defendant promoted Plaintiff to Technician on September 5, 2022.

29.     Throughout his employment, Plaintiff endured an unforgiving and inhumane schedule. Defendants required  Plaintiff to work, and Plaintiff did in fact work, six days per week, with shifts beginning as early as 5:00 AM and routinely stretching to 10:00 PM.

30.     On many occasions, Plaintiff's workdays dragged into the late hours of 11:00 PM or even midnight.

31.    This schedule caused Plaintiff to work consistently between 84 and 96 hours each week, far exceeding the standard 40-hour workweek.

32.    Defendant exploited Plaintiff further through their refusal to compensate Plaintiff for his work-related travel time.

33.    When Plaintiff traveled to remote in-state, and out-of-state locations such as Massachusetts, from Defendants' headquarters in Plainview, NY, Defendants refused to treat Plaintiff's travel time as compensable work hours.

34.    Every two weeks, Plaintiff and his colleagues endured these remote or out-of-state assignments, with each trip consuming an entire week.

35.    Defendants ignored the added strain of extended travel and time spent far from home, withholding any additional pay for these mandatory assignments.

36.    On October 18, 2024, Plaintiff raised concerns with Defendant about the unbearable work schedule, Defendant's failure to pay him properly for all regular and overtime hours worked in a workweek, as well as the harm it was causing to working conditions, bringing Defendants' attention to the unsustainable demands placed upon him.

### *Systematic Wage Violations*

37.    During his employment as a technician in training from October 11, 2021, through September 5, 2022, Plaintiff endured grueling 84- to 96-hour workweeks while receiving weekly payments ranging from approximately $765.44 to $767.06.

38.    This compensation resulted in an effective hourly rate between $9.11 and $9.13, a shockingly low figure that fell far below New York State's legally mandated minimum wage of $15.00 per hour during that time.

39.     After his promotion to Technician, Plaintiff's weekly payments increased to approximately $918.00 for the same demanding schedule of 84 to 96 hours per week.

40.     Despite this nominal increase, Plaintiff's effective hourly rate ranged between $9.56 and $10.93, continuing to fall egregiously short of the legally required minimum wage.

41.     Throughout his employment, Plaintiff consistently worked these excessive hours but never received the required overtime pay of one and one-half times the regular hourly rate for all hours worked beyond 40 in a workweek.

42.     Based on the applicable minimum wage, Plaintiff's overtime rate should have been $22.50 per hour for each overtime hour worked.

43.     However, Defendants did not pay Plaintiff any overtime wages throughout his employment with Defendants.

44.     Instead, Defendants misclassified workers as salaried employees to evade their obligation to pay minimum wage and overtime while enforcing policies that stripped employees of compensation for missed workdays.

45.     These exploitative practices further revealed Plaintiff's actual status as an hourly employee, subject to a calculated system of financial abuse.

46.     Defendants continue to conceal extensive wage violations through a calculated compensation structure combining regular paychecks with under-the-table cash payments.

47.     Plaintiff's official paycheck reflects approximately $1,200.00 in gross weekly earnings (approximately $970.00 after tax), purportedly supplemented by cash payments ranging from approximately $300.00 to $1,200.00 weekly, with an average of approximately $600.00.

48.     This payment scheme results in a total weekly compensation of approximately $1,800.00 for 84 to 96 hours of work.

7

49.     Based on these hours and compensation, Plaintiff's effective hourly rate calculates to approximately $18.75 for only his first forty hours worked each workweek, making the statutorily required overtime rate $28.13 per hour for all hours worked beyond 40 in a workweek.

50.     Defendants further complicate their method of providing for employee compensation by implementing an opaque commission structure, offering workers a 1.5% commission when managers accompany them on assignments.

51.     This commission is contingent on managers achieving a $60,000 weekly gross sales threshold, with no transparency regarding hours worked or commission calculations.

52.     Yet despite purporting to offer this commission structure, Defendants failed and refused to provide Plaintiff with any written commission agreement, grossly violating NYLL 191(c).

53.     Defendants also failed to provide Plaintiff with the legally mandated Spread of Hours pay under the NYLL and its implementing regulations, specifically 12 N.Y.C.R.R. § 142-2.4, which requires an additional hour of pay at the applicable minimum wage rate for each day an employee works more than 10 hours.

54.     Plaintiff consistently worked shifts exceeding 10 hours per day, often by significant margins, yet Defendants failed to compensate him for the Spread of Hours pay owed.

55.     Defendants' failure to provide Spread of Hours pay further exemplifies their deliberate efforts to deprive Plaintiff of the full wages he was lawfully entitled to, compounding the extensive wage and hour violations already detailed.

### *Retaliatory Culture and Abuse of Power*

56.     Defendants enforce a workplace environment marked by systematic retaliation, punishing employees who dare to voice concerns about working conditions.

8

57. Defendants' oppressive practices include multiple documented instances of unjust suspensions and intimidation tactics targeting Plaintiff and his colleagues, for his lodging informal complaints about his excessive work hours and his improper pay from Defendants.

58. By way of example only, on August 1, 2022, after Plaintiff called in sick for the first time during his employment, Defendants imposed a punitive, month-long unpaid suspension.

59. During a phone conversation with his manager on August 3, 2022, Defendant Martinez, more commonly known to Plaintiff as "Rick," admitted to the unjust nature of Plaintiff's suspension, stating, "this is your first time calling out so it's unfair."

60. Yet, Defendant Martinez was repeatedly dismissive of Plaintiff's protest and wage-related complaints, and ultimately attempted to shift blame for Plaintiff's wage underpayments to "Mr. Abe Finkler," who he described to Plaintiff as "the real boss," who "decides what the company does."

61. The draconian nature of Plaintiff's suspension led to approximately half of the employees who were suspended never returning to work.

62. Defendants escalated their pattern of retaliation on October 18, 2024, when Plaintiff raised legitimate concerns via text message to his supervising road manager, Defendant Pfunstein, about the grueling work hours required.

63. Plaintiff highlighted the Defendants' expectation of reporting at 5:30 AM while not finishing until 11:00 PM. Management callously dismissed these concerns via text, stating, "if you can't handle it, just stay home -- just take the day off."

64. In an immediate response to Plaintiff's complaint, Defendants suspended Plaintiff for two days.

65.     Following this incident, Defendants convened meetings where management explicitly warned workers to "get with the program," using intimidation tactics to silence any dissent regarding the abusive working conditions.

66.     In a misguided attempt to shield itself from liability and further silence worker complaints, Defendants began coercing employees to sign weekly statements, falsely declaring, "*I've received my full pay and is not owed anything.*"

67.     Such declarations were implemented specifically after Plaintiff's October 2024 complaint about excessive work hours.

68.     Defendants routinely conducted meetings where management told  workers, "it is what it is," and explicitly threatened an exacting punishment for those who speak up about workers' rights, stating such actions are intended "to put you back on the right track."

69.     Defendants weaponize the vulnerabilities of its workforce, exploiting the immigration status and personal circumstances of many employees to silence dissent and ensure their compliance.

### *Disregard for Worker Safety*

70.     On November 14, 2022, Plaintiff suffered a serious workplace injury when he fell through the roof while performing his duties at the Nassau County Mayor's office.

71.     Immediately after the incident, Plaintiff contacted his manager, Defendant Martinez, to request medical attention due to significant pain in his back and leg.

72.     Rather than ensuring Plaintiff received the medical care he urgently needed, Defendant Martinez displayed an appalling indifference to his wellbeing, prioritizing job completion over his health and safety.

73.    Defendants' contempt for Plaintiff's injury reached a disturbing low when Defendant Martinez mocked the seriousness of his workplace accident by printing photographs of the incident onto hoodies.

74.    This calculated act turned a traumatic workplace injury into a grotesque source of entertainment and ridicule.

75.    This deliberate public humiliation exposed Defendants' complete disregard for employee safety and wellbeing, reducing a serious injury to a tasteless joke at the expense of a suffering worker.

76.    Already subjected to Defendants' harsh retaliatory practices, including the month-long suspension following his first sick day in August 2022, Plaintiff felt he had no choice but to continue working through his injuries.

77.    The ever-present threat of further punitive suspensions coerced Plaintiff into sacrificing necessary medical treatment for his back and leg injuries, all to avoid the wrath of an employer who prioritized retaliation over compassion.

### *Defendant's Final Act of Retaliation*

78.    On January 10, 2025, Plaintiff's counsel served Defendants with a demand letter exposing wage and hour violations alongside allegations of retaliation.

79.    The ink on the demand letter was barely dry when Plaintiff's manager, Defendant Martinez, wasted no time in delivering a final, devastating blow.

80.    Defendant Martinez called Plaintiff, not to address the allegations, but to terminate him on the spot.

81.     When Plaintiff sought an explanation for this abrupt decision, Defendant Martinez callously dismissed him with repeated declarations of "*you're done*," offering no justification, no reasoning, and no acknowledgment of the gravity of his actions.

82.     As Plaintiff pointed out the glaring illegality of the termination, reminding Defendant Martinez of his rights and the protections against such actions, Defendant Martinez unleashed a stunning response that stripped away any pretense of fairness or compliance.

83.     "*I do whatever I fucking want, bro*," Defendant Martinez declared, reducing the law, Plaintiff's rights, and basic decency to ashes with his brazen arrogance.

84.     This termination, delivered with such cold disregard and vulgarity, serves as a chilling illustration of Defendants' complete contempt for accountability, legal obligations, federal and state labor laws, and the humanity of its employees.

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
*Unpaid Overtime Wages under the FLSA*

85.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

86.     29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

87.     As described above, Defendants are each  an "employer" within the meaning of the FLSA, while Plaintiff is an "employee" within the meaning of the FLSA.

88.     Plaintiff worked in excess of forty hours per week, yet Defendants failed to compensate Plaintiff in accordance with the FLSA's overtime provisions.

89.    As described herein, Defendants willfully violated the FLSA.

90.    Plaintiff is entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times his respective regular rate of pay.

91.    Plaintiff is also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendants' willful violations of the FLSA's overtime provisions.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime Wages under the NYLL and the NYCCRR*

92.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

93.    N.Y. Lab. Law § 160 and 12 NYCCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

94.    Defendants are each  an "employer" within the meaning of the NYLL and the NYCCRR, while Plaintiff is an "employee" within the meaning of the NYLL and the NYCCRR.

95.    Plaintiff worked in excess of forty hours in a workweek, yet Defendants failed to compensate him in accordance with the NYLL's and the NYCCRR's overtime provisions.

96.    Plaintiff is entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times his regular rate of pay.

97.    Plaintiff is also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendants' willful violations of the NYLL's and NYCCRR's overtime provisions.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Failure to Pay Minimum Wage under the NYLL*

98.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

13

99.    NYLL § 652 requires employers to pay their employees at least the minimum wage for all hours worked.

100.    Defendants failed to pay Plaintiff at least the minimum wage for all hours worked.

101.    Plaintiff is entitled to recover unpaid minimum wages, liquidated damages, interest, attorneys' fees, and costs for Defendants' willful violations of the NYLL's minimum wage provisions.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Pay Spread-of-Hours Pay in Violation of the NYLL and NYCRR*

102.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

103.    N.Y. Lab. Law § 652 and 12 NYCCRR § 142-2.5 provide that an employee shall receive one hour's pay at the minimum hourly wage rate for any day worked in which the spread of hours exceeds ten hours.

104.    As described above, Defendants are each  an "employer" within the meaning of the NYLL and NYCCRR, while Plaintiff is an employee within the meaning of the NYLL and NYCCRR.

105.    As also described above, Defendants failed to provide Plaintiff with spread of hours pay when his workday exceeded ten hours from start to finish.

106.    Plaintiff is entitled to this extra hour of pay, at the minimum wage rate, for all days worked in excess of ten hours.

107.    Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for Defendants' failure to pay the required spread of hours pay.

**<u>FIFTH CLAIM FOR RELIEF AGAINST DEFNEDANTS</u>**
*<u>Failure to Furnish Proper Wage Notice in Violation of the NYLL</u>*

108.   Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

109.   NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

110.   As described above, Defendants failed to furnish Plaintiff with any wage notice at hire, let alone one that accurately contained all of the criteria required under the NYLL.

111.   Pursuant to NYLL § 198(1-b), Defendants are  liable to Plaintiff in the amount of $50.00 for each workday after the violations initially occurred, up to a statutory cap of $5,000.00.

**<u>SIXTH CLAIM FOR RELIEF AGAINST DEFNEDANTS</u>**
*<u>Failure to Furnish Proper Wage Statements in Violation of the NYLL</u>*

112.   Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

113.   N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

114.   As described above, Defendants, on each payday, failed to furnish Plaintiff with accurate wage statements containing the criteria required under the NYLL.

115.   Pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff in the amount of $250.00 for each workday that the violations occurred, up to a statutory cap of $5,000.00.

**<u>SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS</u>**
*<u>Violations of the Anti-Retaliation Provisions under the FLSA, 29 U.S.C. § 215(a)(3)</u>*

116.   Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

117.   The Fair Labor Standards Act § 215(a)(3) makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . related to" FLSA's provisions.

118.   As set forth above, Defendants retaliated against Plaintiff for engaging in protected activity. Specifically, Defendants terminated Plaintiff's employment shortly after he served Defendants with a demand letter on January 10, 2025, which disclosed Defendants' noncompliance with wage and hour laws, in violation of the FLSA, 29 U.S.C. § 207(a)(1).

119.   As a direct and proximate result of Defendants' conduct in violation of the FLSA, Plaintiff has suffered, and continues to suffer, damages including, but not limited to, lost past and future income, compensation, and benefits.

**EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Violations of the Anti-Retaliation Provisions under the NYLL § 215(1)*

120.   Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

121.   New York Labor Law § 215(1) provides that "No employer . . . shall discharge, threaten, penalize, or in any other manner discriminate against any employee because such employee has made a complaint to his employer . . . that the employer has violated any provision of this chapter [the Labor Law]."

122.   As set forth above, Defendants retaliated against Plaintiff for engaging in protected activities. Specifically, in addition to his suspensions exactly by Defendants in response to his wage complaints, Defendants terminated Plaintiff's employment shortly after he served Defendants with a demand letter on January 10, 2025, which disclosed Defendant's noncompliance with wage and hour laws, in violation of the NYLL § 160, *et seq*.

123.    As a direct and proximate result of Defendants' conduct in violation of the NYLL, Plaintiff has suffered, and continues to suffer, damages including, but not limited to, lost past and future income, compensation, and benefits.

**NINTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Violations of the Whistleblower Protections under NYLL § 740*

124.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

125.    New York Labor Law § 740(2) provides that, "[a]n employer shall not take any retaliatory action against an employee, whether or not within the scope of the employee's job duties, because such employee does any of the following: **(a)** discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation, or that the employee reasonably believes poses a substantial and specific danger to the public health or safety; **(b)** provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any such activity, policy or practice by such employer; or **(c)** objects to, or refuses to participate in any such activity, policy or practice."

126.    Plaintiff engaged in protected activity under NYLL § 740 by lodging numerous complaints of improper pay to his managers, who retaliated against Plaintiff for his complaints by suspending, and ultimately terminating, Plaintiff's employment, as well as taking other deliberate actions and holding meetings designed to further deter or silence any employees' wage and hour complaints.

127.    Plaintiff further engaged in protected activity under NYLL § 740, while Plaintiff was still employed by Defendants, *inter alia*, by serving Defendants with a demand letter on January 10, 2025, which disclosed to Defendants, the Plaintiff's desire to bring legal action against

them if his complaints for proper compensation for his unpaid overtime and wages, and complaints of unlawful retaliation against employees who voiced concerns about work conditions, were left unheard.

128.    In direct response thereto, Defendants retaliated against Plaintiff for engaging in this protected activity, by terminating his employment immediately after receiving the Plaintiff's demand letter, with Defendant Martinez explicitly stating, "*I do whatever I fucking want, bro*" as Plaintiff questioned his termination.

129.    Defendants' retaliatory actions were deliberate, malicious, and undertaken with reckless disregard for Plaintiff's rights under NYLL § 740.

130.    As a direct and proximate result of Defendants' unlawful retaliation in violation of NYLL § 740, Plaintiff has suffered, and continues to suffer, damages, including but not limited to, lost wages, lost benefits, emotional distress, and reputational harm.

131.    Pursuant to NYLL § 740(4), Plaintiff is entitled to recover all remedies available under the statute, including but not limited to reinstatement to his former position (if applicable), back pay, front pay, liquidated damages, attorneys' fees, costs, and civil penalties.

## DEMAND FOR A JURY TRIAL

132.    Pursuant to FRCP 38(b), Plaintiff demands a trial by jury on all questions of fact raised herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendants as follows:

A.      Preliminary and permanent injunctions against Defendants, and their  officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert

with the Defendants, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

B.      A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned laws;

C.      An order restraining Defendants from any retaliation for participation in any form in this litigation;

D.      An award of damages for all unpaid minimum wages and overtime compensation due and owing to Plaintiff, plus liquidated damages, interest, and attorneys' fees and costs as provided for under the FLSA and NYLL;

E.      An award for failure to provide wage notices and wage statements as required by NYLL §§ 195(1) and 195(3);

F.      An award of damages for Defendant'' retaliatory conduct as provided for under the FLSA and NYLL;

G.      Exemplary and punitive damages in an amount commensurate with Defendants' ability and so as to deter future malicious, reckless and/or intentional conduct;

H.      An award to the Plaintiff for the costs and disbursements of this action, including reasonable attorneys' fees, expert fees, and other costs;

I.      Pre-judgment and post-judgment interest, as provided by law; and

J.      Granting such other and further relief as this Court finds necessary and proper.

Date:   New York, New York
        January 29, 2025

                                        Respectfully submitted,

                                        **JOSEPH & NORINSBERG, LLC**



                        By:     *Avraham Y Scher*
                                Avraham Y. Scher, Esq.

19

Michael R. Minkoff, Esq.
Jon L. Norinsberg, Esq.
110 East 59th Street, Suite 2300
New York, New York 10022
*Attorneys for Plaintiff*